LAW OFFICES OF
# FEFERMAN & WARREN
300 Central Avenue, S.W.
Suite 2000 East
Albuquerque, New Mexico 87102
consumer@nmconsumerwarriors.com

Richard N. Feferman
Susan M. Warren
Rob Treinen
Charles Parnall

Phone (505) 243-7773
Fax (505) 243-6663

December 31, 2008

**Via Fax ONLY to 469-227-6581**
Tiffany L. Hawkins
Strassburger & Price, LLP
2801 Network Blvd., Ste 600
Frisco, TX 75034

>    *Re:    Courtice v. Midland Credit Management Inc.,*  No. 08-CV-719 (D. N.M.)

Dear Ms. Hawkins:

Thank you for Trans Union's responses to Ms. Courtice's first set of discovery. The responses are evasive and incomplete. Ms. Courtice seeks to resolve the disputes about these responses without Court involvement.

The Court requires motions to compel to be brought within 20 days of service of the objections. *See*, D. N.M. LR-Civ. 26.6. Ms. Courtice requests that Trans Union provide supplemental discovery responses so that they are received by this firm no later than January 6, 2009. Unless these discovery disputes are resolved, Ms. Courtice intend to file a motion to compel on January 7, 2009.

In Interrogatory No. 3, Ms. Courtice requests that Trans Union provide information concerning its communications with Ms. Courtice. Trans Union's answer is incomplete. Trans Union mentions that on February 29, 2008, Ms. Courtice telephoned Trans Union to ask it why it had refused to consider the letter from Verizon Wireless that Ms. Courtice had provided in support of her dispute of the Midland account. Trans Union states that during this telephone call, Trans Union's outsource agent in India transferred Ms. Courtice to a supervisor. It is assumed that this supervisor would provide Ms. Courtice with an explanation. However, Trans Union does not provide any of the requested information concerning the conversation between Ms. Courtice and the supervisor, not even the supervisor's name.

Trans Union is obstructing Ms. Courtice's access to a key witness. Ms. Courtice requests that Trans Union provide a supplemental response to Interrogatory No. 3 and provide the requested information about the unnamed supervisor. Specifically, Ms. Courtice requests that Trans Union confirm the identity of the supervisor (as requested in Interrogatory No. 3, subpart (a)) and the



company that employed the supervisor (as requested in Interrogatory No. 3, subpart (b)), and state the exact location of the supervisor at the time of the telephone conversation (as requested in Interrogatory No. 3, subpart (c)) and the content of the conversation between the supervisor and Ms. Courtice (as requested in Interrogatory No. 3, subpart (e)).

Concerning this same telephone conversation between Ms. Courtice and the supervisor, in Request for Production No. 11, Ms. Courtice asks Trans Union to produce an unredacted version of a document that it had previously produced that bears bates stamp TU 111. This document shows Trans Union's internal notes concerning the conversation between Ms. Courtice and the supervisor and, apparently, subsequent notes as well. Per the notes, the supervisor is employed by Consumer Relations Global and named Margaret Fernandes, which suggests that she is not in India, like the other Trans Union outsource agents that Ms. Courtice spoke with concerning her disputes. After the notation that "cons was concerned abt the midland credit management . . . wanted to know the reason the doc was not accepted . . .", Trans Union has redacted the remainder of the document, removing all subsequent text. Trans Union refuses to produce an unredacted copy of this notes page.

Trans Union throws up several objections to Request for Production No. 11, including its argument that by Request for Production No. 11, Ms. Courtice seeks privileged information. Notes about the content of the telephone conversation between Ms. Courtice and the supervisor could not be privileged. Moreover, to the extent that the redactions may encompass later communications involving Trans Union's in-house counsel, these communications are likely not privileged. The telephone call at issue took place in February, 2008, six months before Ms. Courtice filed her lawsuit. *See*, Docket No. 1, complaint (filed August 1, 2008). Moreover, any communication between the supervisor and Trans Union's counsel would not be privileged because Trans Union does not employ the supervisor, thus any confidentiality has already been compromised. Finally, Trans Union has failed to provide a privilege log. *See*, *Securities and Exchange Commission v. Lewis (In re Motion for Protective Order for Subpoena Issued to the Stein Law Firm)*, No. 05-CV-33, 2006 U.S. Dist. LEXIS 29161 at *21-23 (D. N.M. Feb. 10, 2006) (privilege objection waived if not adequately supported). Ms. Courtice requests that Trans Union supplement its response to Request for Production No. 11 and provide an unredacted copy of the document that bears bates stamp TU 111.

In Interrogatory No. 9, Ms. Courtice asks Trans Union to provide information concerning other similar claims brought against it. Ms. Courtice limits her request to claims brought in the past 10 years, where the claim concerned "Trans Union's alleged refusal to accept or consider documents sent to Trans Union by any person in support of that person's dispute." Trans Union refuses to answer this interrogatory. It poses boilerplate objections. Trans Union argues that the request is not relevant, overly broad, unduly burdensome and calls for privileged information. Trans Union also claims that this information is equally available to Ms. Courtice.

Information about other similar claims is relevant. Proof of pattern and practice provides admissible evidence of willfulness and entitlement to punitive damages. *See*, FRE 404(b);

2

*Salmeron v. Highlands Ford Sales, Inc.,* 220 F.R.D. 667, 670 (D. N.M. 2003) (evidence that other consumers had been subject to same conduct alleged in the lawsuit "is highly relevant"); *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 574 and 578 (1996) ("[p]erhaps the most important indicum of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct . . . repeated misconduct is more reprehensible than an individual instance of malfeasance."); *Ex Parte Horton,* 711 So.2d 979, 983-984 (Ala. 1998) ("we believe that the United State Supreme Court's opinion in *BMW of North America, Inc. v. Gore* . . . increased the necessity for a plaintiff alleging fraud and seeking punitive damages to seek pretrial discovery of similar alleged acts of misconduct by the defendant").

Interrogatory No. 9 is not overly broad or unduly burdensome. Ms. Courtice narrowly tailored Interrogatory No. 9 to the exact conduct at issue in this lawsuit: "Trans Union's alleged refusal to accept or consider documents sent to Trans Union by any person in support of that person's dispute." In order to avoid unnecessary discovery disputes, Ms. Courtice agrees to limit Interrogatory No. 9 to the past five years – rather than the past ten years as stated in the initial request – if Trans Union will provide the requested information.

Concerning Trans Union's privilege objections, Ms. Courtice requests that Trans Union produce a privilege log that includes all the information required under New Mexico law, if it contends that responsive information would be privileged. *See, Pina v. Espinoza,* 2001 NMCA 55, 130 N.M. 661, 29 P.3d 1062 (N.M. Ct. App. 2001); *Hartman v. Texaco, Inc.,* 1997 NMCA 32, 123 N.M. 220, 937 P.2d 979 (N.M. Ct. App. 1997). Ms. Courtice notes that the privilege objections seem doubtful given that in Interrogatory No. 9 she ask for information available in the public record.

Trans Union's last argument concerning Interrogatory No. 9 is bogus. The information requested is not equally available to Ms. Courtice. Trans Union's attorneys keep track of the lawsuits and agency complaints filed against Trans Union. Ms. Courtice would have to search the records of all federal court jurisdictions, all state court jurisdictions and subpoena the FTC and other agencies, in order to gain access to the same information that Trans Union has available at its fingertips, in its files or in the files of its counsel.

In Interrogatories Nos. 16, 17 and 18, Ms. Courtice seeks information concerning each outsource company involved in handling Ms. Courtice's disputes. In Request for Production No. 20, Ms. Courtice asks Trans Union to produce the contract between it and any relevant outsource company. In Request for Production No. 21, Ms. Courtice asks Trans Union to produce documents that set forth the obligations of the relevant outsource companies for producing documents or witnesses at Trans Union's request.

According to Trans Union's response to Interrogatory No. 3, many of the individuals who handled Ms. Courtice's disputes were outsource agents employed by Consumer Relations Global, Intelenet Global Services Limited and/or Tata America International Corporation. Apparently, all these persons are located in India, with the exception of the supervisor about which Trans

Union refuses to provide information.

Trans Union admits that Tata is a New York corporation but states that Intelenet is an India corporation. Trans Union is silent concerning the country under which Consumer Relations Global is incorporated. Trans Union refuses to state whether Consumer Relations Global or Intelenet have locations within the United States. Trans Union refuses to provide Tata's address.

Ms. Courtice's counsel is experienced in litigation under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), against the three national credit reporting agencies: Equifax, Experian and Trans Union. Both Trans Union and Equifax employ outsource agents located in foreign countries to handle their consumer disputes. Both Trans Union and Equifax use this arrangement to obstruct plaintiffs' ability to depose key witnesses – the persons that actually handled the disputes on behalf of the credit reporting agency – and instead try to foist upon plaintiffs their professional witnesses who speak only of "policy" and have no personal knowledge of the dispute activities. Ms. Courtice's counsel knows that Equifax has produced foreign outsource agents for deposition in other FCRA lawsuits, including in a lawsuit handled by this Court, and Ms. Courtice believes that Trans Union has likely done the same, or likely has the ability to do the same.

Accordingly, in Interrogatory No. 18, Ms. Courtice asks Trans Union to provide information about lawsuits in which Trans Union produced employees of Consumer Relations Global, Intelenet or Tata, for deposition purposes. In Interrogatory No. 17, Ms. Courtice asks Trans Union to provide information about lawsuits in which Trans Union produced documents obtained from Consumer Relations Global, Intelenet or Tata. In Interrogatory No. 16, Ms. Courtice seeks to discover United States locations and contact persons for Consumer Relations Global, Intelenet and Tata, in case it becomes necessary for Ms. Courtice to subpoena these companies or their employees or talk to them to arrange for depositions. In Requests for Production Nos. 20 and 21, Ms. Courtice asks Trans Union to produce the documents that set forth the obligations of the relevant outsource companies for producing documents or witnesses at Trans Union's request. Trans Union refuses to provide any of this information or any responsive documents.

Ms. Courtice needs this information in order to gain access to key witnesses. Trans Union is obstructing discovery. Ms. Courtice requests that Trans Union supplement its responses to Interrogatories Nos. 16, 17 and 18 and to Requests for Production Nos. 20 and 21. Ms. Courtice does not object to receipt of the documents responsive to Requests for Production Nos. 20 and 21 subject to the protective order already entered by the Court. *See*, Docket No. 23, order.

In Request for Production No. 2, Ms. Courtice asks Trans Union to produce name scans concerning her credit file from January 1, 2007, until present. Trans Union refuses. Trans Union has produced name scans to Ms. Courtice's counsel in prior FCRA lawsuits before this Court. *See*, *Riley v. Saxon Mortgage Services, Inc.*, No. 06-CV-1152 (D. N.M.). Trans Union regularly produces name scans in other FCRA litigation. Trans Union's objections to Request for

4

Production No. 2 are bogus.

The best way to prove up Trans Union's publication of inaccurate information is through the name scans, which show a snapshot of Ms. Courtice's credit file at particular times. The inquiry sections of Ms. Courtice's Trans Union credit reports (termed "consumer reports" by Trans Union) show the entities to which Trans Union reported the Ms. Courtice's credit file and the date that the reporting occurred but – as Trans Union states in its response to Request for Production Nos. 13 and 14 – "Trans Union does not maintain copies of credit scores or consumer reports furnished to subscribers." Like Trans Union itself, the subscribers – the entities to which Trans Union provided the credit reports – often do not maintain copies of the credit reports they received from Trans Union. Thus, Ms. Courtice needs the name scans so she can show the information that Trans Union was reporting on her credit file at the time that Trans Union provided her credit file to the entities listed in the inquiry sections.

Ms. Courtice does not object to receipt of the name scans subject to the protective order already entered by the Court. *See*, Docket No. 23, order. Ms. Courtice requests that Trans Union supplement its response to Request for Production No. 2 and produce the requested name scans.

In Request for Production No. 9, Ms. Courtice asks Trans Union to produce certain policy manuals, including the manuals that address which supporting documents it considers acceptable documents and the manuals that explain the criteria – the "MOP CRITERIA" – that Trans Union used in refusing to consider the Verizon Wireless letter. Trans Union states it will produce these manuals at some undetermined future date. Trans Union argues that the policy documents include proprietary information.

Trans Union is stalling. The Court has already entered a protective order. *See*, Docket No. 23, order. Trans Union has had ample time to assemble the requested manuals. Ms. Courtice requests that Trans Union supplement its response to Request for Production No. 9 and produce the requested manuals at this time. Ms. Courtice does not object to receipt of the policy manuals subject to the protective order already entered by the Court. *See*, Docket No. 23, order.

In Request for Production No. 10, Ms. Courtice asks Trans Union to produce studies or reports concerning its acceptable documents policies and its "MOP CRITERIA." Trans Union does not claim that these reports do not exist. Rather, it objects that Request for Production No. 12 is not relevant, overly broad, unduly burdensome and calls for privileged information, including information about other consumers.

The relevance of the reports that Ms. Courtice asks for in Request for Production No. 10 is self evident. A primary issue in this lawsuit is whether Trans Union's policies concerning the documents it will consider in support of a consumer dispute constitute "reasonable procedures to assure *maximum possible accuracy*" of consumer credit information. *See*, 15 U.S.C. § 1681e(b) (emphasis added). Trans Union's own studies on this issue would surely provide information helpful to the jury in weighing whether Trans Union complied with its duties under the FCRA.

Request for Production No. 10 is not overly broad or unduly burdensome. Ms. Courtice narrowly tailored the request to only encompass the policies most implicated in this lawsuit – acceptable documents policies and "MOP CRITERIA" policies – and limited the request to reports from January 1, 1999, until present.

Trans Union's objection that Request for Production No. 10 calls for proprietary information is moot. The Court has already entered a protective order. *See*, Docket No. 23, order. Ms. Courtice does not object to the redaction of any personal identifiers for other consumers contained in any responsive reports. If Trans Union intends to stand on its privilege objections, Ms. Courtice request that Trans Union produce the required privilege log.

In Request for Production No. 12, Ms. Courtice asks Trans Union to produce the contract between it and Midland. Trans Union states it will produce this contract at some undetermined future date. Trans Union is stalling. Trans Union has had ample time to locate the requested contract. Ms. Courtice requests that Trans Union supplement its response to Request for Production No. 12 and produce its contract with Midland at this time. Ms. Courtice does not object to receipt of the contract subject to the protective order already entered by the Court. *See*, Docket No. 23, order.

In Requests for Production Nos. 15, 16, 17 and 18, Ms. Courtice asks Trans Union to produce documents that show the amount of time and money it spent on her dispute and the average amount of time and money it spent on consumer disputes in the last two years. Trans Union does not claim that such documents do not exist. Rather, it objects that Requests for Production Nos. 15, 16, 17 and 18 are not relevant, overly broad, unduly burdensome, call for confidential information and call for privileged information.

These requests are relevant. Pursuant to the FCRA, Congress requires that Trans Union conduct a reasonable investigation in response to a consumer dispute. *See*, 15 U.S.C. § 1681i. Trans Union outsources its investigation responsibilities – here, Trans Union outsourced its investigation to individuals in India – and the outsource companies maximize their profits by handling the disputes as cheaply and quickly as possible. The amount of time and money spent on average with consumer disputes will help the jury decide whether Trans Union's outsourcing policies are reasonable. The amount of time and money spent by Trans Union or its outsource agents on Ms. Courtice's disputes – both in comparison to the average it spends on consumer disputes and as stand alone figures – will help the jury decide whether Trans Union complied with the investigation duties imposed by the FCRA.

Requests for Production Nos. 15, 16, 17 and 18 are not overly broad or unduly burdensome. Ms. Courtice narrowly tailored the request to only her disputes and the average for consumer disputes in the last two years.

Trans Union's objection that Requests for Production Nos. 15, 16, 17 and 18 call for confidential information is moot. The Court has already entered a protective order. *See*, Docket No. 23,

order. Ms. Courtice does not object to receipt of the documents responsive to Requests for Production Nos. 15, 16, 17 and 18 subject to this protective order. *See*, Docket No. 23, order. Ms. Courtice does not object to the redaction of any personal identifiers for other consumers contained in any responsive documents. If Trans Union intends to stand on its privilege objections, Ms. Courtice requests that Trans Union produce the required privilege log.

In Request for Production No. 19, Ms. Courtice asks for all prior depositions and trial testimonies of Trans Union's witnesses in this lawsuit. Trans Union refuses to produce this prior testimony. Rather, it objects that Request for Production No. 19 is not relevant, overly broad, unduly burdensome and calls for confidential information.

Prior testimony that Trans Union's witnesses have given concerning FCRA compliance is relevant. Trans Union has been sued numerous times in the past for refusing to consider clearly relevant supporting documents provided by a consumer. *See*, *e.g.*, *Soghomonian v. United States*, 278 F.Supp.2d 1151 (E.D. Cal. 2003) (Trans Union's failure to consider IRS certificates concerning the invalidity of tax liens in connection with a consumer dispute of Trans Union's reporting of the tax liens provides basis for finding of willful violation of the FCRA). Trans Union uses the same witnesses over and over in its FCRA litigation. Trans Union has likely had the witnesses that it will use in this lawsuit testify in deposition or at trials concerning acceptable documents issues and concerning broader FCRA compliance issues. It would be helpful to the jury to hear what Trans Union's witnesses have said in the past about the issues implicated in this lawsuit. This information would show whether Trans Union has modified its procedures in response to the systemic inadequacies pointed out by prior lawsuits, or whether it continues to make the same "mistakes" time and time again. This information would assist the jury in weighing whether Trans Union employs "reasonable procedures to assure *maximum possible accuracy*." *See*, 15 U.S.C. § 1681e(b) (emphasis added). This prior testimony will also assist Ms. Courtice's counsel prepare for depositions and prepare for potential impeachment of Trans Union's witnesses at the trial in this lawsuit.

Request for Production No. 19 is not overly broad or unduly burdensome. Ms. Courtice narrowly tailored the request to only cover the witnesses that Trans Union will use in this lawsuit. Ms. Courtice agrees that Trans Union can provide the prior testimony at a later date, provided it provides the prior testimony no later than midway through the discovery period so that Ms. Courtice's counsel can use the prior testimony in preparing for depositions.

Concerning Trans Union's confidentiality objection, Ms. Courtice agrees to receive the prior testimony subject to the protective order already entered by the Court. *See*, Docket No. 23, order. If Trans Union contends that some of the prior testimony is precluded from disclosure by a protective order entered in other litigation, Ms. Courtice requests that Trans Union provide a list of the caption, court and docket number for the lawsuits in which these depositions were taken, along with the name, address and telephone number for opposing counsel. This information will allow Ms. Courtice's counsel to verify that the protective order covers 100% of the deposition transcript and allow will allow Ms. Courtice to petition the relevant court to set aside the

protective order as to the deposition at issue, if the circumstances merit such action. Ms. Courtice would also agree to receive transcripts with redactions, if the protective order at issue only covers parts of the transcript.

In Request for Production No. 23, Ms. Courtice asks for documents that would show Trans Union's current net worth. Trans Union refuses to provide net worth documents. It objects that the request is not relevant, overly broad, unduly burdensome and calls for proprietary information.

Trans Union's net worth is relevant. Ms. Courtice will ask the jury to award punitive damages against Trans Union under the FCRA. *See*, 15 U.S.C. 1681n(a)(2) (providing for punitive damages under the FCRA). A majority of state and federal courts permit pretrial discovery of a defendant's net worth where punitive damages are sought. *See*, *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 151 (D. Kan. 1990) (collecting cases). The New Mexico federal district court is part of this majority. *See*, *Pedroza v. Lomas Auto Mall, Inc.*, No. 07-591, 2008 U.S. Dist. LEXIS 91733 at 6-7 (D. N.M. Nov. 10, 2008) (pretrial discovery of net worth allowed unless claim for punitive damages is "spurious"). Ms. Courtice is entitled to obtain net worth information before trial because "to deny discovery of net worth until plaintiff can make a showing of a prima facie case at trial would only lead to delay and confusion, while plaintiff reviews the information for the first time." *Mid Continent Cabinetry, Inc.* at 152.

Here, Ms. Courtice's claims against Trans Union are not spurious. Ms. Courtice provided Trans Union with a letter from the original creditor – Verizon Wireless – in which the creditor stated that it would remove its reporting of the account from Ms. Courtice's credit reports. Apparently, this letter was sufficient proof for the other two credit reporting agencies – Equifax and Experian – to remove Midland's reporting of its collection account based on the Verizon Wireless account. It is important to note that Equifax and Experian deleted the Midland account from Ms. Courtice's credit reports despite Midland's verification of its reporting to all these credit reporting agencies.

Trans Union did not remove the Midland account because it refused to consider the Verizon Wireless letter provided by Ms. Courtice. Trans Union so stated in a letter to Ms. Courtice dated January 25, 2008. This refusal to consider the Verizon Wireless letter is clearly a violation of the FCRA. *See*, 15 U.S.C. § 1681i(a)(4) ("consumer reporting agency *shall* review and consider all relevant information submitted by the consumer") (emphasis added). Indeed, in *Soghomonian*, *supra*, another federal district court found Trans Union's refusal to consider similar supporting documents to provide a proper basis for a punitive damages claim under the FCRA. 278 F.Supp.2d at 1161.

Trans Union has admitted that it took no action to investigate the Verizon Wireless letter provided by Ms. Courtice or to confirm its authenticity. As admitted in Requests for Admission Nos. 16, 17 and 18, Trans Union did not contact Ms. Courtice, Verizon Wireless or Midland to "request any clarification or explanation" concerning the letter. Rather, Trans Union simply

blithely refused to consider the letter at all – the same letter that the other two credit reporting agencies apparently found sufficient to support Ms. Courtice's dispute – even in the face of prior litigation in which another federal district court strongly chastised Trans Union for similar conduct. *See, Soghomonian*, 278 F.Supp.2d at 1161.

Request for Production No. 23 is not overly broad or unduly burdensome. Ms. Courtice limited Request for Production No. 23 to the most current net worth documents available. This limitation is included in the language of the request.

Ms. Courtice is willing to accommodate the proprietary nature of Trans Union's net worth by considering any net worth documents confidential under the protective order already entered by the Court. *See*, Docket No. 23, order.

Please feel free to telephone me to discuss any of these issues.

Truly yours,

Rob Treinen

RT/

cc:     Rodney L. Schlagel (via fax ONLY to 889-8870)

9