IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARIAN H. COURTICE,

        Plaintiff,

v.        No. 08-CV-719 LH/DJS

MIDLAND CREDIT MANAGEMENT, INC.; and
TRANS UNION LLC,

        Defendants,

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion to Compel Trans Union LLC to Answer Written Discovery **[Doc. No. 32]**, filed on January 7, 2009. Plaintiff moves the Court to compel Defendant Trans Union LLC ("Trans Union") to fully respond to her November 19, 2008 First Set of Discovery (Doc. No. 29). Plaintiff contends Trans Union refused to answer many of the discovery requests and provided partial answers to other requests. However, since the filing of Plaintiff's motion, Trans Union has supplemented its discovery responses, resolving all discovery disputes except for Trans Union's responses to Requests for Production Nos. 2, 9 and 19.

### I. Factual Background

Plaintiff contends Verizon Wireless ("Verizon) assessed charges against her that it was not permitted to assess. Eventually, Verizon deleted these charges and its derogatory reporting of Plaintiff's account from her credit reports. Verizon provided Plaintiff a letter informing her it was deleting its reporting of the account. Pl.'s Br. Supp. Mot. Compel; Ex. A.

Midland Credit Management, Inc., purchased the Verizon account.  Despite Plaintiff providing Midland a copy of the Verizon letter, Midland continued to try to collect on the account and refused to delete its derogatory reporting of the account from Plaintiff's credit report.  Plaintiff contends she repeatedly requested Midland and Trans Union to investigate the matter and delete the Midland account from her records, with no results.  Thus, Plaintiff filed this action against Midland and Trans Union.

## II.  Discussion

The Court views discovery requests with the liberality contemplated by the federal rules. Discovery is designed to ""[m]ake trial less a game of blind man's buff and more a fair contest with basic issues and facts disclosed to the fullest possible extent." *United States v. Proctor and Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 986-87 (1958).  Federal courts construe discovery rules liberally to insure a litigant's right to discovery is broad and flexible.  *Goldman v. Checker Taxi Co.*, 325 F.2d 853, 855 (7th Cir. 1963).  Under Rule 26, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED.R.CIV.P 26(B)(1).

The test of relevancy is significantly broader at the discovery stage, therefore, discovery is permitted as to matters which "[are] or may become relevant," *Payer, Hewitt & Co. v. Bellanca Corp.*, 26 F.R.D. 219, 221  (D.Del. 1960), or "might conceivably have a bearing" on the subject matter of the action, *Triangle Mfg. Co. v. Paramount Bag Mfg. Co.*, 35 F.R.D. 540, 542 (E.D.N.Y. 1964); *see also E.I. duPont de Nemours & Co. v. Deering Milliken Research Corp.*, 72 F.R.D. 440, 443 (D.Del. 1976)( "Unless it is palpable that the evidence sought [to be made subject to discovery] can have no possible bearing upon the issues, the spirit of the new [federal] rules calls for every relevant fact . . . to be brought out for the inspection not only of the

opposing party but for the benefit of the court . . . .")(citing *Hercules Powder Co. v. Rohm & Haas Co.*, 3 F.R.D. 302, 304 (D.Del. 1943)).

Federal Rule of Civil Procedure 34 governs requests for production of documents. Rule 34 requires a written response to a request for production to "state with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated. If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts." FED.R.CIV.P. 34(b). Subsection (b) also provides that a party who produces documents for inspection "shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." *Id.* Under subsection (a), a party may be required to produce relevant documents and tangible things that are within its "possession, custody or control." Fed.R.Civ.P. 34(a). "[C]ontrol comprehends not only possession but also the right, authority, or ability to obtain the documents." *Comeau v. Rupp*, 810 F.Supp. 1127, 1166 (D.Kan. 1992).

**Request for Production No. 2**

Request for Production No. 2 asks Trans Union to produce its name scans concerning Plaintiff's credit file, from January 1, 2007, to the present. Plaintiff contends that name scans are the best way to prove Trans Union's publication of inaccurate information because name scans show a snapshot of Plaintiff's credit file at particular times. Trans Union does not dispute Plaintiff's assertion that Trans Union "regularly produces name scans in other FCRA litigation." Pl.'s Reply at 4. Trans Union objected to this request on the basis of cost, arguing the cost to produce the name scans for the requested period of time was prohibitive.

3

In response to this objection, Plaintiff has further limited the time-frame to "January 1, 2007, until the first month in which the scan shows the Midland account is no longer reporting on [Plaintiff's] Trans Union credit report" or October 2008.  *Id.*  The Court will grant Plaintiff's Motion to Compel as to Request for Production No. 2 for the limited time-frame set forth by Plaintiff.

**Request for Production No. 9**

Plaintiff's Request for Production No. 9 asks Trans Union to produce certain policy documents, including documents that address which supporting documents Trans Union considers acceptable documents and the documents that explain the specific criteria, such as the document Trans Union referenced in refusing to consider the Verizon Wireless letter Plaintiff submitted to Trans Union.  *See* Pl.'s Br. Supp. of Mot. Compel; Ex. E ("Received document for Midland Credit.  It is unacceptable due to MOP CRITERIA DOESN'T MATCH.").

Plaintiff contends Trans Union produced the "Acceptable Documents Manual," but it failed to produce the "Acceptable Document Samples" chapter and the "Unacceptable Document Samples" chapter of the User's Guide.  Additionally, Trans Union failed to produce an exemplar of "Letter 207."  Trans Union's Acceptable Documents Manual directs its employees to send "Letter 207" when a document is seemed unacceptable.

Finally, Plaintiff contends Trans Union also failed to produce any policy manual that concern its "MOP CRITERIA."  Plaintiff argues that the "MOP CRITERIA" formed the sole basis for Trans Union's refusal to consider the Verizon Wireless letter and assumes it is the same as "manner of payment" criteria to which Trans Union cited in its response.  Plaintiff contends these documents are relevant to the issues before the Court.

The Court agrees and finds that these documents are relevant and should be produced.

**Request for Production No. 19**

Request for Production No. 19 asks for "[a]ll prior depositions and trial testimonies of persons who Trans Union will call as witnesses in the trial of this lawsuit." Pl.'s Br. Supp. Of Mot. Compel, Ex. B.  Trans Union contends this particular issue was previously addressed and decided in *Riley v. Saxon Mortgage Services, inc.*, CIV No. 06-1152 MCA/WDS.  *See* Def. Trans Union's Resp., Ex.F.  Plaintiffs' attorney also represented the plaintiff in *Riley*.

The Court in *Riley* ruled, in relevant part, that although Defendants did not need to produce deposition or trial transcripts concerning prior testimony of their witnesses in other Fair Credit Reporting Act lawsuits, nonetheless, Plaintiffs could inquire about the prior testimony of Equifax's and Trans Union's witnesses at the depositions of Equifax's and Trans Union's 30(b)(6) representatives.  Plaintiff contends it will agree to the Court's ruling in *Riley*. Accordingly, Plaintiff may inquire about the prior testimony of Trans Union's witnesses in other Fair Credit Reporting Act lawsuits at their deposition.

**Request for Production No. 23**

Although the parties have reached a compromise concerning "net worth" documents, the parties want the agreement reflected in the Court's order.  In response to Request for Production No. 23, Trans Union responded it intended to file a motion for summary judgment prior to the dispositive motions deadline of July 6, 2009.  Specifically, Trans Union argued:

> Unlike Trans Union, Plaintiff will not be prejudiced by delaying disclosure [of Trans Union's net worth] until after Trans Union's Motion for Summary Judgment is ruled upon by the Court.  In the event of an adverse ruling, Trans Union would promptly produced (sic) sufficient financial information to evidence its net worth and such information should be self-explanatory, to Plaintiff's counsel, requiring minimal substantive review . . . . This is the very same arrangement ordered by Judge Schneider in Riley, and Trans Union request the same finding here.

Trans Union's Resp. at 21-22.  Thus, Trans Union agrees to produce its financial information after the Court rules on Trans Union's motion for summary judgment.  Accordingly, the Court will incorporate the parties' agreement into its order.

**NOW, THEREFORE**,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel is granted as to Request for Production Nos. 2, 9 and 19.

1. Trans Union shall produce its name scans concerning Plaintiff's credit file, from January 1, 2007, until the first month in which the name scan shows that the Midland account is no longer reporting on Plaintiff's Trans Union credit report or until October 2008.

2. Trans Union shall produce the Acceptable Document Samples chapter and the Unacceptable Document samples chapter of the User's Guide, an exemplar of Letter 207, and any policy manual that concern its "MOP Criteria."

**IT IS FURTHER ORDERED** that Plaintiff may inquire about the prior testimony of Trans Union witnesses in other Fair Credit Reporting Act lawsuits at their deposition.

**IT IS FURTHER ORDERED** that Trans Union shall provide a statement of its net worth within ten (10) days of any decision by the Court on a dispositive motion allowing the Plaintiff's claim for punitive damages to go forward, or within ten (10) days of the dispositive motion deadline, if no such motion is filed.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**