IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARIAN H. COURTICE,

       Plaintiff,

v.                                        No. 08-CV-719 LH-DJS

MIDLAND CREDIT MANAGEMENT, INC.;
TRANS UNION LLC; VERIZON WIRELESS (VAW) LLC;
and CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,

       Defendants.

## FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

1.     Defendant Verizon Wireless (VAW) LLC, or the servicing company to which it outsources, Cellco Partnership d/b/a Verizon Wireless, assessed charges against Plaintiff Marian H. Courtice's account that it was not permitted to assess.  Eventually, Verizon Wireless deleted these charges and deleted its negative reporting of Ms Courtice's account from her credit reports.  However, Defendant Midland Credit Management, Inc., who had purchased the Verizon Wireless account, continues to try to collect on the account and refuses to delete its negative reporting of account from Ms Courtice's credit report, despite Ms. Courtice providing Midland documentary proof that she does not owe on the account.  Moreover, Defendant Trans Union LLC, one of the three major credit reporting agencies, refuses to perform a genuine and reasonable investigation into Ms. Courtice's disputes concerning the account and continues to report Midland's negative reporting of the account.  The other two major credit reporting agencies, Equifax

Information Services LLC and Experian Information Solutions, Inc. have deleted the account from Ms. Courtice's credit report in response to Ms. Courtice's disputes.

### Jurisdiction and Venue

2.      This Court has jurisdiction under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"), 15 U.S.C. § 1681p, under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), 15 U.S.C. § 1692k(d), and under 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.  The events took place in this District.

### Parties

3.      Plaintiff Marian H. Courtice resides in Corrales, New Mexico.  She is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c), the FDCPA, 15 U.S.C. § 1692a(3), and the New Mexico Credit Bureaus Act ("CBA"), NMSA 1978 § 56-3-1.

4.      Defendant Midland Credit Management, Inc. is a foreign corporation that is a "furnisher of information" as contemplated by FCRA, 15 U.S.C. § 1681s-2(b), who regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions.  Also, Midland's principal business is the collection of consumer debts.  It regularly collects or attempts to collect debts owed or due or asserted to be owed or due another.  It has been engaged by multiple creditors to do so.  Midland is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

5.      Defendant Trans Union LLC is a foreign corporation that is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f), and a "credit bureau" as defined by the CBA, NMSA 1978 § 56-3-1.  Trans Union assembles consumer credit information

or other information on consumers for the purpose of furnishing credit reports to third parties. It uses means of interstate commerce for the purpose of preparing or furnishing credit reports.

6.    Defendant Verizon Wireless (VAW) LLC is a foreign limited liability company that provides cell phone services in New Mexico. It provided cell phone services to Ms. Courtice for a short period of time in 2004.

7.    Upon information and belief, Cellco Partnership d/b/a Verizon Wireless is a servicing company employed by Verizon Wireless to service Verizon Wireless accounts. Cellco serviced the Verizon Wireless cell phone account opened by Ms. Courtice.

## Facts

8.    In 2004, Ms. Courtice moved to New Mexico from Oregon in advance of her husband.

9.    Shortly after Ms. Courtice's arrival in New Mexico, she obtained a Verizon Wireless cell phone.

10.   However, the cell phone did not work in the adobe home that the Courtices had rented while they looked for a home to purchase.

11.   Ms. Courtice returned the cell phone and cancelled the Verizon Wireless account within two weeks.

12.   Nevertheless, Verizon Wireless or Cellco billed Ms. Courtice for charges that it was not authorized to assess.

13.   Ms. Courtice disputed these charges directly with Verizon Wireless.

14.   In March, 2007, Verizon Wireless finally agreed to delete the charges and delete its negative reporting of the account from Ms. Courtice's credit reports.

3

15.    Verizon Wireless provided Ms. Courtice a letter, dated March 14, 2007, in which it stated that it had deleted its negative reporting of the account from Ms. Courtice's credit reports.

16.    At some point, Midland purchased the Verizon Wireless account.

17.    Midland repeatedly dunned Ms. Courtice concerning the account, by telephone and by letters.

18.    Ms. Courtice disputed the account directly with Midland numerous times, both by telephone and by letter.

19.    Ms. Courtice also telephoned Verizon Wireless about Midland's harassment of her concerning the account.

20.    Verizon Wireless told Ms. Courtice that it would contact Midland and stop Midland from further harassing her.

21.    However, Midland's harassment continued.

22.    Ms. Courtice also disputed Midland's negative reporting of the account with the three credit reporting agencies: Equifax, Experian and Trans Union.

23.    As part of these disputes, Ms. Courtice provided Midland, Equifax, Experian and Trans Union with a copy of the March 14 letter from Verizon Wireless.

24.    Upon information and belief, Equifax, Experian and Trans Union sent information concerning Ms. Courtice's dispute to Midland and Midland received the information.

25.    In response to Ms. Courtice's dispute, Equifax and Experian deleted Midland's negative reporting of the account.

26.    However, Midland verified its negative reporting of the account to Trans Union.

27.    Trans Union continues to report Midland's negative reporting of the account.

4

28.  Midland and Trans Union refused to perform a genuine and reasonable investigation into Ms. Courtice's disputes.

29.  Midland and Trans Union failed to review and consider all relevant information submitted by Ms. Courtice in connection with her disputes.

30.  Midland and Trans Union persisted in reporting information that they knew or should have known to be inaccurate and damaging to Ms. Courtice.

31.  If Midland and Trans Union had conducted a genuine and reasonable investigation into Ms. Courtice's disputes, they would have deleted the account from Ms. Courtice's credit report.

32.  Ms. Courtice suffered actual damages, including:

    a.  damage to her credit rating;

    b.  damage to her creditworthiness;

    c.  lost time;

    d.  out-of-pocket expenses;

    e.  humiliation and embarrassment; and

    f.  aggravation and frustration.

## First Claim for Relief: FCRA Violations by Midland

33.  Midland:

    a.  failed to review and consider all relevant information submitted by Ms. Courtice;

    b.  failed to conduct a genuine and reasonable reinvestigation in response to Ms. Courtice's dispute;

    c.      failed to report that the information that it reported about the account is inaccurate;; and

    d.      persisted in reporting information that it knew or should have known to be inaccurate and damaging.

34.    Midland's actions are willful or, in the alternative, negligent, violations of the FCRA, including 15 U.S.C. § 1681s-2(b).

35.    Ms. Courtice is entitled to actual damages, punitive damages, costs and reasonable attorney fees.

### Second Claim for Relief: FCRA Violations by Trans Union

36.    Trans Union failed to maintain reasonable procedures to ensure the maximum possible accuracy of the consumer credit information it reported concerning Ms. Courtice.

37.    Trans Union:

    a.      failed to review and consider all relevant information submitted by Ms. Courtice in connection with her disputes;

    b.      failed to provide Midland with all relevant information provided by Ms. Courtice;

    c.      failed to conduct a genuine and reasonable reinvestigation in response to Ms., Courtice's disputes;

    d.      persisted in reporting information that they knew or should have known to be inaccurate and damaging; and

    e.      failed to delete inaccurate information from Ms. Courtice's credit report.

38.    The actions and inactions of Trans Union were willful, or, in the alternative, negligent violations of the FCRA, including 15 U.S.C. §§ 1681e(b) and 1681i.

39.   Ms. Courtice is entitled to actual damages, punitive damages, costs and reasonable attorney fees.

### Third Claim for Relief: FDCPA Violations by Midland

40.   Midland's actions and inactions violate the FDCPA, including but not limited to, 15 U.S.C. §§ 1692e, 1692e(2)(a) and 1692e(10).

41.   Ms. Courtice is entitled to recover statutory damages, actual damages, costs and reasonable attorney fees.

### Fourth Claim for Relief: CBA Violations by Trans Union

42.   The actions and inactions of Trans Union violated the CBA, including but not limited to, NMSA 1978 § 56-3-2.

43.   The actions and inactions of Trans Union were willful, or, in the alternative, negligent violations of the CBA.

44.   Ms. Courtice is entitled to actual damages, punitive damages, costs and reasonable attorney fees.

45.   Ms. Courtice is entitled to declaratory and injunctive relief.

### Fifth Claim for Relief:
### Violations of the New Mexico Unfair Practices Act by All Defendants

46.   The respective actions and inactions of Defendants concerning the Verizon Wireless account and the reporting of the account on Ms. Courtice's credit reports occurred in the regular course of each respective Defendant's trade or commerce.

7

47.     The actions and inactions of Defendants violate the New Mexico Unfair Practices Act,
        NMSA 1978 §§ 57-12-1 *et seq.* ("UPA"), as defined by NMSA 1978 § 57-12-2(D)
        generally and NMSA 1978 § 57-12-2(D)(14) and (15) specifically.

48.     Defendants willfully engaged in these violations of the UPA.

49.     Ms. Courtice is entitled to actual or statutory damages, trebled, plus costs and reasonable
        attorney fees.

50.     Ms. Courtice is entitled to declaratory and injunctive relief.

## Jury Demand

51.     Ms. Courtice requests trial by six person jury on all issues where a jury trial is available.

## Request for Relief

Ms. Courtice requests that this Court:

A.  Declare that Midland and Trans Union are reporting the Verizon Wireless account
    inaccurately;

B.  Enjoin Midland from reporting the Verizon Wireless account to any credit reporting agency;

C.  Enjoin Trans Union from reporting the Verizon Wireless account in Ms. Courtice's credit file
    or on any credit report attributed to Ms. Courtice;

D.  Award actual damages and punitive damages against Midland and Trans Union under the
    FCRA;

E.  Award statutory damages and actual damages against Midland under the FDCPA;

F.  Award actual damages and punitive damages against Trans Union under the CBA;

G.  Award actual or statutory damages, trebled, against all Defendants, under the UPA;

H.  Award costs and reasonable attorney fees; and

8

I.   Provide such further relief as this Court deems just.

Respectfully submitted,

FEFERMAN WARREN & TREINEN PA

ROB TREINEN
300 Central Ave. SW, Suite 2000 West
Albuquerque, New Mexico 87102
(505) 243-7773
(505) 243-6663 (fax)


I CERTIFY that a true and correct copy of the foregoing pleading was mailed to Charles R.
Hughson, attorney for Defendant Midland Credit Management, Inc., at Rodey Dickason Sloan
Akin & Robb PA, P.O. Box 1888, Albuquerque, New Mexico 87103; to Rodney L. Schlagel,
attorney for Defendant Trans Union LLC, at Butt Thorton & Baehr PC, P.O. Box 3170,
Albuquerque, New Mexico 87190; and to Tiffany L. Hawkins, attorney for Defendant Trans
Union LLC, at Strasburger & Price LLP, P.O. Box 1308, 2801 Network Blvd., Suite 600, Frisco,
Texas 75034, on May 18, 2009.

ROB TREINEN